**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **J.L., A MINOR,** ) | |
| **BY AND THROUGH HIS PARENTS,** ) | |
| **J.L. AND C.L.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 06-1652** |
| ) | **Judge Nora Barry Fischer** |
| ) | |
| **AMBRIDGE AREA SCHOOL** ) | |
| **DISTRICT** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION**</u>

## I.    INTRODUCTION

This matter involves claims of a minor, J.L., and his parents, J.L. and C.L. ("Parent Plaintiffs") (collectively, "Plaintiffs") that J.L. was denied a free appropriate public education ("FAPE") for the period of 2001 through 2006 by Defendant Ambridge Area School District ("AASD"). Prior to the filing of this action, the parties engaged in administrative proceedings within the Pennsylvania Department of Education.  From the outset, Defendant AASD stipulated that it denied J.L. a FAPE during the 2004-2005 and 2005-2006 school years.  Defendant has contended that the statute of limitations provision of the IDEA, effective in 2005, barred any claims of the parents prior to the 2004-2005 school year.  In the prior proceedings, both the Hearing Officer and the Appeals Panel Board held that the statue of limitations provision barred such claims while acknowledging numerous violations prior to that school year.  Plaintiffs were awarded compensatory

education, a remedy which requires AASD to provide educational services to J.L. for the two years of violations as a result of the administrative process.  In their complaint, Plaintiffs have alleged that such denial of FAPE by AASD has resulted in violations of the Individuals with Disabilities in Education Act ("IDEA") 20 U.S.C. §§ 1400, et. seq. (2005); section 504 of the Rehabilitation Act ("§ 504") 29 U.S.C. §§ 701, et. seq. (1998), as amended and 29 U.S.C. 704 (1998) and 29 U.S.C. § 794(a) (2002); and the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101, et seq., (1990).  Plaintiffs have requested review of an Appeals Court order, monetary damages, and attorneys fees for such violations.

 Before the Court is Defendant's Motion to Dismiss [DE 4] .  For the following reasons, this Court **GRANTS IN PART AND DENIES IN PART** said motion.

## II.    BACKGROUND

At the time of the filing of the complaint, J.L. was a seventeen year old high-school student of AASD.[1]   (Docket No. 1 at ¶ 9).   J.L. suffers from several disabilities including Tourette Syndrome, Obsessive Compulsive Disorder, Attention Deficit Disorder, a Specific Learning Disability, and a traumatic brain injury.  (Docket No. 1  at ¶ 21.)  These conditions have the effect of placing substantial limitations on J.L.'s major life functions, but he does have an average IQ and is therefore capable of learning. (Docket No. 1 at ¶ 21.)  As a result of these disabilities, J.L. is a student with disabilities within the meaning of the IDEA, Section 504 and the ADA.  (Docket No. 1 at ¶ 22.)

When he was in the third grade, J.L. was classified for educational purposes by the AASD

---

[1]

J.L. was born on Dec. 20, 1988, and at the time of the filing of this opinion, he is 19 years old.  (Docket No. 1-2 at 1.)

as a child with "other health impairment." (Docket No. 1 at ¶ 23.) At the end of fifth grade, J.L. was diagnosed with a severe Neuropsychological Impairment, Obsessive Compulsive Disorder, Attention Deficit Hyperactivity Disorder, and Tourette Syndrome. (Docket No. 1 at ¶ 26.) During sixth grade, in October of 2000, the AASD Individual Educational Program team determined that J.L. suffered from Neurological Impairment and Emotional Distrubance, and recommended that he be placed at an approved private school. (Docket No. 1 at ¶ 28.) In November 2000, after receiving the consent of his parents, J.L. was removed from public school and placed at the PACE School. (Docket No. 1 at ¶ 29.) At the PACE School, J.L. continued to "exhibit very serious behavioral and social problems." (Docket No. 1 at ¶ 30.) These problems led to J.L. being subject to six weeks of inpatient hospitalization treatment. (Docket No. 1 at ¶ 30.) After his release from the hospital in May 2001, J.L. was placed on homebound instruction. (Docket No. 1 at ¶ 30.)

From the fall of 2001, the beginning of seventh grade, until the end of eleventh grade in the spring of 2006, J.L.'s education involved a combination of one-on-one instruction at the Huntington Learning Center, and some other form of instruction. (Docket No. 1 at ¶ 31.) In seventh and eighth grade, J.L. received services at a residential treatment center. (Docket No. 1 at ¶ 31.) J.L. attended a vocational technical school for the first half of tenth grade. (Docket No. 1 at ¶ 31.) For the remainder of tenth grade and all of eleventh grade, J.L. was placed in a community-based on-the-job training program. (Docket No. 1 at ¶ 31.) During eleventh grade, in May of 2005, AASD completed a reevaluation of J.L.'s educational, behavioral and social needs, ultimately concluding that J.L. was making progress in all areas. (Docket No. 1 at ¶ 32.) After receiving these results, J.L.'s parents obtained an Independent Educational Evaluation from Dr. Margaret Kay which determined that J.L. had developed a Specific Learning Disability as a result of his educational services between 2000-

2005.  (Docket No. 1 at ¶¶ 31-32.)  The results of Dr. Kay's evaluation were provided to AASD, which conducted a reevaluation in September of 2005, and afterwards, AASD agreed that J.L. had developed a Specific Learning Disability.  (Docket No. 1 at ¶¶ 33-34.)  The parents of J.L. requested due process hearings in August of 2002, December 2004 and January 2005, but withdrew all three requests after AASD and J.L.'s parents agreed upon various aspects of his educational placement.  (Docket No. 1 at ¶ 37.)

On March 3, 2006, Plaintiffs, through counsel, filed notice with the AASD requesting a due process hearing.  (Docket No. 1-2 at 5.)  A due process hearing was subsequently conducted on May 16, 2006, May 24, 2006 and June 23, 2006.  (Docket No. 1-2 at 1.)  At the due process hearing, AASD stipulated, on the record, that it had violated J.L.'s right to FAPE for the school years of 2004-2005 and 2005-2006.  (Docket No. 1 at ¶ 41.)

After the parties presented evidence, the Hearing Officer held that J.L. was denied FAPE for the 2004-2005 and 2005-2006 school years.  (Docket No. 1 at ¶ 44.)  The Hearing Officer found that the statute of limitations provision of the IDEA precluded any claims of J.L. from violations that occurred two years before March 3, 2006, the day the due process hearing was requested by J.L.'s parents.  (Docket No. 1 at ¶ 45.)  This holding excluded J.L.'s claims of denial of FAPE for the 2001-2002, 2002-2003 and 2003-2004 school years.  (Docket No. 1 at ¶ 45.)  The Hearing Officer ordered that J.L. be awarded 990 hours of compensatory education to remedy the violations in both the 2004-2005 and 2005-2006 school years for a total of 1980 hours of compensatory education.  (Docket No. 1 at ¶ 44.)  Further, the order required AASD to finance and pre-approve all services, and for the services to be provided to J.L. prior to his twenty-first birthday.  (Docket No. 1 at ¶ 48.)

In an appeal to the Appeals Panel, J.L. specifically took exception with the following

decisions of the Hearing Officer: the application of the statute of limitations to bar J.L.'s claims prior to 2004; the award of two years compensatory education for violations during the 2004-2005 and 2005-2006 school years; and the requirement that all services be rendered to J.L. prior to his twenty-first birthday. (Docket No. 1 at ¶ 50.) Further, Plaintiffs alleged that the Hearing Officer incorrectly weighed the facts and credibility of the witnesses. (Docket No. 1 at ¶ 50.)

On September 14, 2006, the Appeals Panel affirmed in part and reversed in part the Hearing Officer's order. (Docket No. 1 at ¶ 56.) The Appeals Panel affirmed the Hearing Officer's order applying the statute of limitations to bar J.L.'s claims prior to March 3, 2004. (Docket No. 1 at ¶ 57.) Further, the Appeals Panel reversed the Hearing Officer's order of compensatory damages finding that in addition to the 1980 hours of compensatory education granted, J.L. was entitled to: an additional three (3) hours of compensatory education for every day from March 3, 2004 to the end of the 2004-2005 school year; an additional five and a half (5 ½) hours of compensatory education for every day from March 3, 2004 to the end of the 2005-2006 school year representing other services that J.L. would have received over that period; and granted J.L.'s parents the authority to decide how compensatory education should be used to further J.L.'s education. (Docket No. 1 at ¶ 57.) The Appeals Panel also reversed the Hearing Officer's requirement that the services awarded be used by J.L. prior to his 21st birthday. (Docket No. 1 at ¶ 57.)

On December 13, 2006, J.L., and his parents, filed the instant complaint against AASD seeking review of the Appeals Panel Order, monetary damages, and an award of attorneys' fees for alleged violations of the IDEA, ADA, § 504 and their civil rights under 42 U.S.C. § 1983.[2]

---

[2] Plaintiffs attached the following documents to their complaint: Exhibit "A" - July 16, 2006 Decision of Special Education Hearing Officer; Exhibit "B" - September 14, 2006 Decision of

On March 5, 2007, Defendant filed the instant motion,[3] and on March 26, 2007, Plaintiffs filed a Brief in Opposition to Defendant's Motion to Dismiss.

On April 6, 2007, the case was reassigned to the undersigned Judge. Subsequently, a Motion to Seal was filed by Plaintiffs along with a supporting brief. This Court granted said motion and the Administrative Record was filed as sealed documents on June 4, 2007.

On June 6, 2007, the Defendant filed and this Court granted, Defendant's Motion to Supplement its brief. On June 7, 2007, Defendant filed a Supplemental Brief and Plaintiffs filed a Reply Brief to Defendant's Supplemental Brief on June 25, 2007. Plaintiffs filed a motion for a hearing on the supplemental briefs, which was granted by the Court and oral argument was held on July 3, 2007.

On July 11, 2007, this Court, pursuant to the recent Third Circuit decision in *A.W. v. Jersey City Pub. Sch.*, holding that the IDEA cannot be enforced through 42 U.S.C. § 1983, dismissed counts IV and V of the Plaintiffs' complaint. *See, A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d. Cir. 2007). (Docket No. 26.) The remaining counts (Counts I, II, III, VI, VII, and VIII) are the subject of the pending motion to dismiss.

At the request of the parties, on July 20, 2007, and August 17, 2007, the Court held lengthy settlement conferences in an effort to resolve this matter. The discussions led to a resolution that J.L.

---

Special Education Appeals Panel; Exhibit "C" - Independent Educational Evaluation Report by Dr. Margaret J. Kay; Exhibit "D" - Report of Andrew M. Klein; and Exhibit "E" - August 24, 2006 Decision of Special Education Hearing Officer. (Docket No. 1.)

[3]
Defendant attached the following in support of its motion to dismiss: the Opinion and Order of the Appeals Panel dated October 2, 2006 [DE 5-2] and a letter dated March 3, 2006 by Plaintiffs' counsel [DE 5-3] requesting AASD to hold a due process hearing. (Docket No. 5.)

was to proceed to vocational training, but all other outstanding issues remain in dispute.

On December 20, 2007, Plaintiffs filed a notice of additional precedent with the Court, identifying recent district court holdings in the Third Circuit addressing the issue of the availability of monetary damages under the IDEA. (Docket No. 28.)

## III. LEGAL STANDARD

Pending is a motion to dismiss. Under *Bell Atlantic v. Twombly*,---U.S.---, 127 S.Ct. 1955, 167 L.ED.2d 929, a complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Recently, the Third Circuit addressed the *Twombly* decision and its affect on the appropriate pleading standard, finding that despite the new "plausibility" language, *Twombly* does not demand either a heightened pleading of specific facts or impose a probability requirement on plaintiffs. *Phillips v. County of Allegheny*, --- F.3d ----, 2008 WL 305025, at *5 (3d Cir. Feb. 5, 2008). In *Phillips*, the Third Circuit interpreted *Twombly* as a reaffirmation of both the notice pleading standard under Federal Rule of Civil Procedure 8 and the general standard in a Rule 12(b)(6) motion. *Id.*, 2008 WL 305025, at *3. However, the Third Circuit identified "two new concepts" within the *Twombly* decision: (1) a plaintiff's obligation under Rule 8 "to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," but Rule 8 requires "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,' " in other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Id.*, 2008 WL 305025, at *4 (citing *Twombly*, 127 S.Ct. at 1964-65, 1966, & n.3); and (2) the " 'no set of facts' language [from *Conley v. Gibson*, 355 U.S. 41 (1957)] may no longer be used as part of the Rule

12(b)(6) standard," *Id.*, 2008 WL 305025, *4. In short, the Court provided the following guidance as to *Twombly's* effect:

> Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a showing that "the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.

*Phillips*, 2008 WL 305025, at *5 (citing *Twombly*, 127 S.Ct. at 1964).

Further, "[i]n determining the sufficiency of the complaint the court must accept all of plaintiffs' well-pled material allegations as true and draw all reasonable inferences therefrom in favor of plaintiffs." *McCliment v. Easton Area School Dist.*, Civil Action No. 07-0472, 2007 WL 2319768, at *1 (E.D. Pa. Aug. 10, 2007) (citing *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997)); *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). "The issue is not whether a [Plaintiff] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)). Under this standard, a complaint will be deemed to have alleged sufficient facts if it adequately puts the plaintiff on notice of the essential elements of defendant's claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp.*, 127 S.Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise

a right to relief above the speculative level." *Id.*.  Overall, "courts have an obligation ... to view the complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable.  We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner."  *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss "including public records ..., documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case."  *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, No. Civ.A. 06-CV-1346, 2007 WL 2844870, at *2  (E.D. Pa. Sept. 27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 and n.2 (3d Cir. 1995)) (internal citation omitted).

Finally, the defendant bears the burden to demonstrate that the complaint fails to state a claim.  *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

## IV.    IDEA CLAIMS

As a preliminary matter, this Court has jurisdiction over Plaintiffs' claims of violations of the IDEA by virtue of section 1415(i)(3)(A) of the IDEA, which provides that a district court is granted subject matter jurisdiction to hear an appeal of an Appeals Panel order, regardless of the amount in controversy.  18 U.S.C. § 1415(i)(3)(A) (2005).

The Supreme Court of the United States has held that "[t]he goals of IDEA include ensuring that all children with disabilities have available to them a free appropriate public education and

ensuring that the rights of children with disabilities and parents of such children are protected." *Winkelman v. Parma City School Dist.,* --- U.S. ---, 127 S.Ct. 1994, 2000 (May 21, 2007) (citing 20 U.S.C. §§ 1400(d)(1)(A)-(B) (2000 ed., Supp. IV)). In *Winkelman*, the Supreme Court defined free appropriate public education, or FAPE, pursuant to an independent educational plan ("IEP") in the following manner:

> an educational instruction specially designed to meet the unique needs of a child with a disability, coupled with any additional related services that are required to assist a child with a disability to benefit from that instruction. The education must, among other things, be provided under public supervision and direction, meet the standards of the State educational agency, and include an appropriate preschool, elementary school, or secondary school education in the State involved. The instruction must, in addition, be provided at no cost to parents.

*Winkelman*, 127 S.Ct. at 2000-2001 (citing *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 102) (internal citations omitted)).

Plaintiffs claim that J.L., a student at Defendant AASD, was not provided a FAPE as required by the IDEA for a period commencing in the start of the 2001-2002 school year and ending at the conclusion of the 2005-2006 school year. (Docket No. 1.) In the administrative proceedings, Defendant stipulated that it did not provide J.L. with FAPE for the 2004-2005 and 2005-2006 school years. (Docket No. 1 at ¶ 41.)

In its Motion to Dismiss, Defendant argues that the IDEA claims of Plaintiffs do not state a claim upon which relief can be granted because of the following: J.L.'s parents do not have standing under the IDEA to pursue claims on their own behalf; the statute of limitations bars any claims of Plaintiffs for violations of the IDEA prior to the 2004-2005 school year and that neither the statutory exceptions nor any common law doctrines asserted by Plaintiffs apply to toll the statute

of limitations; Plaintiffs are not entitled to submit additional evidence; and that Plaintiffs are not entitled to monetary damages for violations of the IDEA. (Docket No. 5.) The Court will address each argument, in turn.

A.    Standing

Defendant argues that J.L.'s parents have no substantive rights under the IDEA and that all claims relating to their rights under the IDEA should be dismissed. (Docket No. 5 at 12.) In support, Defendant relies on *Collinsgru v. Palmyra Board of Education*, 161 F.3d 225, 236 (3d Cir. 1998). However, in *Winkelman v. Parma City School District*, the Supreme Court overruled *Collinsgru*, holding that the "IDEA grants parents independent, enforceable rights. These rights, which are not limited to certain procedural and reimbursement-related matters, encompass the entitlement to a free appropriate public education for the parents' child." *Winkelman*, --- U.S. ---, 127 S.Ct. at 2005. In light of the Supreme Court's holding in *Winkelman*, this Court DENIES Defendant's motion to dismiss as to Plaintiffs' IDEA claim based on standing.

B.    Statute of Limitations

Plaintiffs aver in their complaint that they are entitled to de novo review of decisions of law, and a modified de novo review of factual findings of the Appeals Panel decision.[4] Plaintiffs contend

---

[4]

Plaintiffs initially averred that they were entitled to de novo review of the Appeals Panel Order, but in their Brief in Response to Defendant's Motion to Dismiss, assert that they are entitled to de novo review of questions of law, and to a modified de novo review as to factual findings of the administrative tribunal's decision. Defendant argues that the proper standard is for the district court to give "due weight" to the findings of the state administrative proceedings.

The Court acknowledges the dispute between the parties as to the applicable standard of review. As discussed below, the Court declines to conduct such a review at the motion to dismiss stage of the proceedings and will resolve this dispute upon motions for summary judgment.

that the Hearing Officer and Appeals Panel erred, as a matter of law, in applying 20 U.S.C. §

1415(f)(3)(C) (the "statute of limitations") to bar any claims of failure to provide J.L. with FAPE

prior to March 3, 2004, for failing to apply either of the exceptions to the statute of limitations under

20 U.S.C. § 1415(f)(3)(D), and for failing to apply a number of common law doctrines that would

have the effect of overriding the statute of limitations.  (Docket No. 1 at ¶ 3.)  Defendant argues that

the application of the statute of limitations provision, without applying the exceptions or common

law doctrines, was proper and that any of the Plaintiffs' claims under the IDEA before the 2004-2005

and 2005-2006 school year are thus barred as untimely.  (Docket No. 5 at 1-2 .)  Each argument is

addressed below, in turn.

       i.     *Application of the Statute of Limitations*

Section 1415(f)(3)(C)[5] of the IDEA provides that:

> [a] parent or agency shall request an impartial due process hearing
> within 2 years of the date the parent or agency knew or should have
> known about the alleged action that forms the basis of the complaint,
> or, if the State has an explicit time limitation for requesting such a
> hearing under this sub-chapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C) (2005).  While there is little caselaw interpreting this statutory limitation,[6]

the Regulations from Secretary of the Department of Education (hereinafter, "Regulations") explain

---

[5]

     The statute of limitations and exceptions were added when the IDEA was revised and signed
into law in December 2004, becoming effective July 1, 2005.  20 U.S.C. §§ 1415(f)(3)(C)-(D).

[6]

     In *Winkelman*, while discussing the rights of parents under the IDEA, the Supreme Court
cited section 1415(f)(3)(C) as "indicating that [a] parent or agency shall request an impartial due
process hearing within a certain period of time."  *Winkelman,* 127 S. Ct. at 2002.

this provision. 71 F.R. § 46540-01 (August 14, 2006).[7]  With respect to the two-year time period, the Regulations provide that it is "clear that a due process complaint must allege **a violation that occurred** not more than two years before the date the parent or public agency knew, or should have known, about the alleged action that forms the basis of the due process complaint." 71 F.R.§ 46540-01 at 46697 (August 14, 2006) (emphasis added).  The Regulations further provide that "hearing officers will have to make determinations, on a case by case basis, of factors affecting whether the parent 'knew or should have known' about the action that is the basis of the complaint." 71 F.R. § 46540-01 at 46706 (August 14, 2006).  Thus, the IDEA statute of limitations is triggered when the parent knew or should have known about the action that forms the basis of the complaint.

In this Court's estimation, any inquiry into the application of the statute of limitations requires a highly factual determination as to whether the parent "knew or should have known" of violations that formed the basis of their complaint.  The IDEA allows review of the administrative record under section 1415(i)(2) of the Act and provides that the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2) (2005).  Plaintiffs have requested such a review. While the Defendant *may* possess a potentially viable defense in the statute of limitations, it would be improper for this Court to grant a motion to dismiss as to the Plaintiffs' claims without

---

[7]

The Secretary of the Department of Education issued these regulations after a determination that such regulations were "needed to implement changes made to the Individuals with Disabilities Education Act, as amended by the Individuals with Disabilities Education Improvement Act of 2004 (Act or IDEA)." 71 F.R. § 46540-01 (August 14, 2006).  The regulations were effective October 13, 2006, and thus applicable to this case.

conducting a thorough review of the administrative record and not only a review of the Hearing Officer and Appeals Panel decisions attached to the complaint. Moreover, the proper vehicle for review of the record and analysis of the applicable statute of limitations is on a motion for summary judgment given the motion to dismiss standard set out above. *See Burke v. Brookline School District*, Civil No. 06-cv-215-SM, 2007 U.S. Dist. LEXIS 66091, at *3-5 (N.H. September 6, 2007) (unpublished) (denying motion to dismiss based on the defense of the IDEA statute of limitations). As such, Defendant's motion to dismiss as to the IDEA claim based on the statute of limitations defense is DENIED without prejudice.

ii.    *Exceptions to the Statute of Limitations*

Section 1415(f)(3)(D) enumerates two exceptions to the statute of limitations, providing in relevant part that the statute of limitations:

> shall not apply to a parent if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D) (2005). The Regulations further provide that the drafters declined to specifically define "misrepresentations" as used in the Act, explaining that "[w]e do not believe that it is appropriate to define or clarify the meaning of "misrepresentations," as requested by the commenters. Such matters are within the purview of the hearing officer." 71 F.R. § 46540-01 at 46706 (August 14, 2006). Further, "[i]f the complaining party believes that the timeline in [20 U.S.C. 1415(f)(3)(C)] should not apply, the complaining party would need to ask the hearing officer to determine whether an untimely due process complaint can proceed to hearing based on

misrepresentations by [the district]. The hearing officer would then determine whether the party's allegation constitutes an exception to the applicable timeline." 71 F.R. § 46540-01 at 46706 (August 14, 2006).

Again, the Defendant's motion to dismiss initiates a highly factual inquiry, i.e., whether the parents were prevented from filing a due process complaint due to the alleged misrepresentations of, or the withholding of information by, the Defendant. Because of the nature of the Plaintiffs' allegations involving certain misrepresentations and omissions of the Defendant, this Court's inquiry cannot end at the pleading stage.

With regards to the misrepresentations and omissions, outlined in their complaint, the Plaintiffs allege the following:

> 37. The Parents previously requested Special Education Due Process hearings in August 2002, December 2004, and January 2005. Each request was withdrawn only after the District promised to correct, modify or amend J.L.'s then current IEP and program to meet his unique needs.
>
> 38. To their detriment, the Parents relied on the District and their agents at HLC, to provide J.L. with FAPE within the meaning of the IDEA.
>
> 39. The findings of the [independent educational evaluation] coupled with the District's repeated failure to correct, modify, and amend the IEP as promised, prompted the Parents to request a due process hearing.
>
> ...
>
> 51. The District's failure to provide J.L. and his Parents with the above mandated information including but not limited to IEP(s), progress reports, procedural safeguards, and evaluation reports, caused the Parents, the IEP team and the MDT team to either conceal, exaggerate, inflate and/or understate J.L.'s true present levels of educational performance such that J.L. lost his chance to receive

FAPE in the least restrictive environment.

52. The omissions and failures of the District to provide the IDEA mandated information is a misrepresentation(s), omission(s), and/or a concealment(s) of a material fact and/or information made intentionally for the purposes of either excluding the Parents from the IEP process or to hide J.L.'s current present levels, all of which either interfered with his Parents' procedural due process rights and/or J.L.'s right to a FAPE/FEOF thereby maintaining J.L. in a harmful segregated inappropriate program/placement.

53. The Parents reasonably and justifiably relied to their detriment on the truthfulness and the completeness of the District's and the HLC's oral and/or written evaluation reports regarding J.L.'s needs, the provision of FAPE and the District's compliance with the IDEA.

54. As a direct and proximate result of the District's misrepresentations, omissions, concealment and ongoing course of conduct of violating the IDEA, material facts regarding J.L.'s needs and rights were not provided to the Parents.

55. The District's failures, omissions, misrepresentations and concealment of material facts were deliberate and done in conscious disregard to J.L. and his Parents' statutory rights.

(Docket No. 1 at ¶¶ 37-39; 51-55.)

The Court notes that the Plaintiffs have generally alleged that the Defendant made certain misrepresentations and withheld certain information to the parents in the course of their dealings, which prevented the parents from requesting a due process hearing. Both the Hearing Officer and Appeals Panel's decisions found that the Plaintiffs did not put forth sufficient testimony from the parents or sufficient evidence to warrant the application of one of the exceptions under section 1415(f)(3)(D). Further, while Plaintiffs have alleged that "[t]o the extent necessary Plaintiffs are entitled to introduce additional evidence regarding the facts at issue," it is not clear that the Plaintiffs have specifically requested that this Court hear additional evidence to support their claims that the

Parent Plaintiffs were prevented from requesting a due process hearing because of misrepresentations or omissions by the Defendant. (Docket No. 1 at ¶ 69.) As Plaintiffs bear the burden of proof on this point and in light of the appropriate legal standard requiring a party to include sufficient factual allegations in their complaint to make relief plausible, as discussed above, this Court GRANTS Defendant's Motion to Dismiss as to the application of the exceptions to the statute of limitations, without prejudice, but grants Plaintiffs leave to amend their complaint to conform with the pleading requirements outlined in *Twombly* and *Phillips*.

### iii. *Common Law Doctrines*

Plaintiffs allege also that it was an error of law for the Appeals Panel to refuse to apply one of several common law doctrines to toll the statute of limitations in this case. The Plaintiffs rely primarily on *Jeffery Y. v. St. Mary's Area School District*, 967 F. Supp. 852 (W.D.Pa 1997), arguing that J.L. can overcome the bar of the statute of limitations by applying the continuing violation doctrine.[8] Defendant argues that such allegations should be precluded as the holding in *Jeffery Y.* pre-dates the adoption of the IDEA statute of limitations and that the Regulations provide that the exceptions enumerated in 20 U.S.C. § 1415(f)(3)(D) are the exclusive exceptions to the statute of limitations. (Docket No. 5.)

The Regulations explain that "the Act provides explicit exceptions to the timeline for requesting a due process hearing. [20 U.S.C. § 1415(f)(3)(D)] incorporates these provisions. These exceptions **do not include when a violation is continuing** or where a parent is requesting

_____

[8]

    In addition to their argument that the continuing violation theory should have been applied by the Hearing Officer and Appeals Panel, Plaintiffs assert that the following common law doctrines should apply to toll the IDEA statute of limitations: equitable estoppel, quasi estoppel, the minority tolling doctrine, and the discovery rule. (*See* Docket No. 1 at ¶¶ 88-89.)

compensatory services for a violation that occurred not more than three years from the date that the due process complaint was filed." 71 F.R. § 46540-01 at 46697 (August 14, 2006) (emphasis added). The drafters further explained that "[i]t is not necessary to clarify that common-law directives regarding statutes of limitations should not override the Act or State regulatory timelines, as the commenters recommended, because the Act and these regulations prescribe specific limitation periods which supersede common law directives in this regard." 71 F.R. § 46540-01 at 46697 (August 14, 2006).

The Court agrees with the Defendant that the Regulations firmly establish that the two exceptions specifically set forth in the statute are the exclusive exceptions to the statute of limitations and, as such, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiffs' assertion that the statute of limitations provision is tolled by applying the continuing violation theory or other common law doctrines. Accordingly, Plaintiffs shall not proceed on such theory or doctrines.

C.      Additional Evidence

In their complaint, Plaintiffs have generally requested that this Court hear additional evidence. Specifically, Plaintiffs assert in their complaint that expert testimony as to the calculation of the award of compensatory education granted to J.L. in the state administrative proceedings should be admitted. (Docket No. 1 at ¶¶ 58-60.) Further, Plaintiffs have requested the admission of evidence to support their contention that the Appeals Panel erred in failing to apply the qualitative standard set forth in *B.C. v. Penns Middle School District*, 906 A.2d 642 (Pa. Cmwlth. 2006).[9]

---

[9]

While Defendant did not raise the issue in its Motion to Dismiss, the Court acknowledges the Plaintiffs' contention in their complaint that the *B.C.* standard was promulgated 12 days after J.L. filed his exceptions to the Hearing Officer's decision. Hence, there appears to be an issue as to whether the *B.C.* standard should apply to this litigation at all.

(Docket No. 1 at ¶ 97.) Plaintiffs next allege that "each expert can supplement their testimony as to the need for additional hours/years of compensatory education services consistent with the factors set forth in B.C." (Docket No. 1 at ¶ 98.) Defendant argues that such evidence is procedurally barred by the statute of limitations. (Docket No. 5 at 11.) The Court notes that the calculation of educational hours to be provided to J.L. was discussed at length during settlement negotiations held before the Court on July 20, 2007 and August 17, 2007. Hence, to the extent that such calculations have been agreed upon by the parties, the Plaintiffs' request for additional evidence on this point may now be moot.

The IDEA provides that district courts "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(e)(2) (2005). Despite the mandatory language of the statute, the determination of whether or not to allow the admission of additional evidence, and if additional evidence is to be admitted, what evidence, is a determination left to the trial court's discretion. *Susan N. v. Wilson School Dist.*, 70 F.3d 751, 760 (3d Cir. 1995) (citing *Carlisle Area School v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995); *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994); *Oberti v. Board of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993); *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 791-92 (1st Cir. 1984)). Other Circuits have construed "additional" as "supplemental." *See Burlington*, 736 F.2d at 790; *Ojai*, 4 F.3d *Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993). The Third Circuit has declined to adopt any bright line rule which would find that the proper construction of "additional" evidence would exclude all testimony from those who did, or could have, testified at the original administrative hearing. *Susan N.*, 70 F.3d at 759-760. Instead, the Third Circuit "decided a [trial] court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful." *Id.* at 760. This

admission of additional evidence includes the ability to hear testimony concerning relevant, non-cumulative events that occur subsequent to the administrative hearings. *Id.* at 759 (citing *Ojai*, 4 F.3d at 1471).

In this Court's estimation, to properly rule on Defendant's motion, the Court would first need to receive an offer of proof by the Plaintiffs (following the filing of an Amended Complaint) and then the Court must undertake a thorough examination of the current record to determine if such proffered evidence is supplemental, relevant, non-cumulative and useful, as required prior to any hearing and its admission. As such determination is within the discretion of the Court, the Defendant's Motion to Dismiss the Plaintiffs' request for the admission of any and all additional evidence is DENIED. Plaintiffs shall provide such offer of proof to the Court within forty-five (45) days of the filing of this Opinion.

D.    Monetary Damages Under the IDEA

Plaintiffs allege that they are entitled to monetary damages for violations of the IDEA by Defendant. Defendant argues that the IDEA does not provide for an award of monetary damages for IDEA violations. The IDEA provides that a district court "shall grant such relief as the court determines is appropriate." 20 U.S.C. 1415(i)(2)(C)(iii) (2005). Defendant maintains that money damages are not specifically authorized under the IDEA, and that the analysis of the Supreme Court in *Arlington Central School District Board of Education v. Murphy,* 548 U.S. 291, 126 S.Ct. 2455 (2006), is applicable here to prevent the Plaintiffs from recovering money damages for IDEA violations. (Docket No. 5 at 14-16.) The Court notes that *Arlington* held that a plaintiff could not recover expert fees under the IDEA, and that while the Defendant's rationale may be sound, the Court need not rule on this argument because of additional precedent discussed below.

In their brief, Plaintiffs claim that the "Third Circuit has continually recognized the relief of money damages and restitution in the form of compensatory education as appropriate relief." (Docket No. 7-2 at 15.)  None of the cases cited by Plaintiffs in support of this assertion however stand for the proposition that money damages can be awarded to a plaintiff directly under the IDEA. (Docket No. 7-2 at 15.)  A group of these cases approved the awarding of money damages for § 1983 actions to enforce IDEA rights.  *See*, *W.B. v. Matula*, 67 F.3d 484, 495 (3d Cir. 1995); *CM v. Board of Education of Union County Regional High School Dist.*, 128 Fed.Appx. 876, 880 (3d Cir. 2005) (not precedential); *Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999); *Jeremy H. By Hunter v. Mount Lebanon School Dist.,* 95 F.3d 272, 278 (3d Cir. 1996).  However, as § 1983 actions are no longer available to enforce IDEA rights, these cases have no precedential value supporting an IDEA claim for money damages.  In another case cited by Plaintiffs to support their money damages claim the Third Circuit specifically declined to decide whether money damages were available directly under the IDEA, holding that a money damage award to the plaintiff's mother was in the form of reimbursement for expenses and not money damages.  *See Bucks County Dept. Of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61, 67 (3d Cir. 2004) ("[b]ecause paying de Mora for her time constitutes reimbursement and not damages, we do not need to decide today whether monetary damages may be recovered in an action brought under IDEA").

Neither party cited any case law that either explicitly authorized or denied Plaintiffs' claim of monetary damages directly under the IDEA.  While this motion was pending, to their credit, Plaintiffs filed with the Court additional precedent relating to this issue (Docket No. 28) in which courts have rejected the availability of money damages directly under the IDEA.  *See Brandon v. Chichester School District*, Civil Action No. 06-4687, 2007 WL 2155722 at *2-3 (E.D. Pa. July 15,

2007) (granting defendant's motion to dismiss IDEA claims based on money damages); *C.J.G. v. Scranton School District*, No. 3:07-CV-1314, 2007 WL 4269816 at *7-8 (M.D. Pa. December 3, 2007) (granting defendant's motion to dismiss IDEA claims for money damages, as such relief is not available). *See also Ronald E. v. Philadelphia Board of Education*, Civil Action No. 05-2535, 2007 WL 4225584 at *9-10 (E.D. Pa. November 29, 2007) (granting defendant's motion for summary judgment on IDEA claims based on money damages). Finally, the Plaintiff cites *Damien J. v. School District of Philadelphia*, in which the Court denied a motion to dismiss IDEA claims requesting monetary damages. *Damien J. v. School District of Philadelphia*, Civil Action No. 06-3866, slip op. 35 at n. 2 (E.D. Pa. filed September 7, 2007) (unpublished). However, in ruling on a motion for judgment on the administrative record, the Court in *Damian J.* awarded the plaintiff compensatory education for violations of the IDEA and did not award monetary damages. *See Damian J. v. School Dist. of Philadelphia*, Civil Action No. 06-3866, 2008 WL 191176, at *7 (E.D. Pa. January 22, 2008).

While the Third Circuit has yet to issue a definitive ruling on the availability of money damages directly under the IDEA, a majority of other Circuit Courts have held that such relief is not available. *See*, *e.g., Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 31 (1st Cir. 2006) ("[T]ort-like money damages are not within the scope of appropriate relief under the IDEA, because the IDEA's primary purpose is to ensure FAPE, not to serve as a tort-like mechanism for compensating personal injury") (citations omitted); *Polera v. Board of Education of Newburgh Enlarged City School District,* 288 F.3d 478, 483-86 (2nd Cir. 2002) ("[w]e ... hold that monetary damages are not available under the IDEA."); *Sellers v. School Board of Manassas, Virginia,* 141 F.3d 524, 527 (4th Cir. 1998) ("[t]ort-like damages are simply inconsistent with IDEA's statutory scheme."); *Gean v. Hattaway*,

330 F.3d 758, 774 (6th Cir. 2003) ("discretion to award monetary damages under this statute extends only to restitution for money that should have been paid by the state for educational services-not to general damages") (citations omitted); *Charlie F v. Bd. Of Educ. Of Skokie Sch. Dist.,* 98 F.3d 989, 991 (7th Cir. 1996) ("damages are not relief that is available under the IDEA."); *Witte v. Clark Co. School District,* 197 F.3d 1271, 1275 (9th Cir. 1999) ("[a]lthough the IDEA allows courts to grant such relief as the court determines is appropriate, ordinarily monetary damages are not available under that statute.").

In *Damien J.*, the Court acknowledged the lack of precedent in the Third Circuit on the issue, as well as the holding in *Brandon v. Chichester School District* rejecting a claim for money damages under the IDEA, but nevertheless declined to adopt such holding. *Damien J.,* Civil Action No. 06-3866, slip op. 35 at n. 2 (E.D. Pa. filed September 7, 2007) (unpublished). The Court instead broadly interpreted the language of the IDEA that the court "shall grant such relief as the court determines is appropriate" to include money damages, noting that it will assume that these damages are available until the Third Circuit rules otherwise. *Id.*

This Court declines to take such an expansive interpretation of "appropriate," but is persuaded by the overwhelming authority rejecting claims for money damages under the IDEA. Accordingly, the Court GRANTS the Defendant's motion to dismiss Plaintiffs' claims for money damages under the IDEA.

## V.    ADA AND SECTION 504 CLAIMS

In addition to the IDEA claims stated above, Plaintiffs have asserted claims under the ADA[10]

---

[10]

Section 12132 of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from

and section 504[11] of the Rehabilitation Act. Both acts prevent the discrimination of individuals based on a disability, and have been interpreted to apply to prevent students with disabilities from being denied a free appropriate public education by a school district. *See Ridgewood*, 172 F.3d at 253 (quoting *W.B.*, 67 F.3d at 492-493) ("We have held that there are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition and have noted that the regulations implementing § 504 require that school districts 'provide a free appropriate education to each qualified handicapped person in [its] jurisdiction.'"). *See also Jeremy H.*, 95 F.3d at 279 ("[the ADA] ... extends the nondiscrimination rule of section 504 of the Rehabilitation Act to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds")).

Defendant has moved to dismiss these claims for the following reasons: J.L.'s parents lack standing to set forth claims under both the ADA and section 504; Plaintiffs have failed to exhaust administrative remedies as required under the IDEA prior to bringing such claims against the district; Plaintiffs do not state a claim under section 504; and Plaintiffs have not established bad faith or gross misjudgment as required under the ADA. (*See* Docket No. 5.)

A.    Standing

Defendant argues that J.L.'s parents do not have standing to bring claims under the ADA and § 504. (Docket No. 5 at 12.) In its reply brief, however, Plaintiffs assert that "J.L.'s Parents make

---

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1990).

[11]

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, ..., shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2002).

no claims under either [the ADA or § 504]." (Docket No. 7 at ¶ 13.) Accordingly, as the Parent Plaintiffs have either stated no claims or have withdrawn any claims under the ADA or § 504, this argument is moot.

      B.    <u>Exhaustion of Remedies</u>

Defendant next argues that Plaintiffs' claims under the ADA and § 504[12] should be dismissed for failure to state a claim because the Plaintiffs did not raise such claims in the March 3, 2006 due process complaint or at the due process hearing, and as such, has failed to exhaust administrative remedies. (Docket No. 5 at 3-7.) Defendant states that the only issues before the hearing officer were the following: "whether J.L. was entitled to receive compensatory education beyond the two year time frame, the amount of compensatory education owed for the 2004-2005 school year and whether the Parents were entitled to reimbursement for various expenses." (Docket No. 5 at 3.) As no other issues were raised, any additional federal claims asserted by the Plaintiffs were not fully exhausted and "Plaintiffs cannot circumvent exhaustion by tacking on additional federal claims to their IDEA claims." (Docket No. 5 at 4.)

Section 1415(l) of the IDEA provides that:

> Nothing in this title [20 USCS §§ 1400 et seq.] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973 [29 USCS §§ 790 et seq.], or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this part** [20 USCS §§ 1411 et

---

[12]

In its motion to dismiss, Defendant also asserts that Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed, but such claims were previously dismissed by this Court in a July 11, 2007 Order. (*See* Docket No. 26.)

seq.**], the procedures under subsections (f) and (g) shall be
exhausted to the same extent as would be required had the action
been brought under this part** [20 USCS §§ 1411 et seq.].

20 USC 1415(l) (2005) (emphasis added). The procedures required to be exhausted are outlined in

subsections (f), a due process hearing, and (g), an appeal to such due process hearing. 20 U.S.C. §

1415(f)-(g). *See also,* 22 PA CODE §14.162(b) (2008) (due process hearing); 22 PA CODE §

14.162(o) (2008) (appeal rights). The present section 1415(l) is textually identical to the previous

section 1415(f). With regards to the prior section 1415(f), the Third Circuit has held that:

> [w]hile section 1415(f) requires a party to exhaust the IDEA's
> administrative remedies before pursuing other claims, the section
> makes clear that the IDEA is not the exclusive avenue through which
> children with disabilities can assert claims for an appropriate
> education. Indeed, Congress amended the IDEA in 1986 to include
> section 1415(f) in response to the Supreme Court's decision in *Smith
> v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82, L.Ed.2d 746 (1984),
> which held that the IDEA was the exclusive statute through which a
> disabled child could obtain relief.

*Susan N.*, 70 F.3d at 763.

The Defendant relies on *Jeremy H*. and *Neshaminy School District v. Karla B*., 1997 WL

563421 (E.D. Pa. September 3, 1997), to support its claim that Plaintiffs have not fully exhausted

the remedies under the IDEA. Both cases however can easily be distinguished from the instant

matter. In *Jeremy H*., the Court found that IDEA claims of the plaintiff after a certain date were not

fully exhausted, and remanded the resolution of those claims to the administrative tribunal. *Jeremy

H*., 95 F.3d at 283-284. The administrative process had not been invoked for the period in question,

and the plaintiff was required to exhaust the IDEA's remedies prior to bringing claims in district

court. *Id.* In *Neshaminy*, the Court held that claims were not fully exhausted because the plaintiff

asserted that it was entitled to compensatory education in its complaint. *Neshaminy*, 1997 WL

563421 at *5.  However, the issue of compensatory education had not been litigated during the administrative process because the parties agreed to limit the issues of the due process hearing to not include compensatory education.  *Id*.  As compensatory education is relief that can be awarded by a hearing officer in a due process hearing, the district court properly held that the plaintiff had not fully exhausted her remedies under the IDEA.  *Id.* at *8.

In this action, Plaintiffs seek monetary damages and attorneys fees as relief for the denial of FAPE under both the ADA and § 504.  (*See* Docket No. 1 at ¶ 176; 41 ¶ 2.)  The parties litigated the alleged denial of FAPE at both levels of the two-tiered administrative system for IDEA claims in Pennsylvania.  J.L. sought relief that could be provided to him in those proceedings, i.e., compensatory education and reimbursement of certain expenses.  In this Court's estimation, a requirement that Plaintiffs set forth all possible claims, including those seeking relief not available under the IDEA in the initial due process complaint, is contrary to the purpose of the exhaustion requirement.  Accordingly, this Court finds that Plaintiffs have set forth sufficient facts to make it plausible that a cause of action for violations of the ADA and § 504 can be maintained in this case and discovery should be had on the same.

C.     Section 504 Claim

Defendant contends that the section 504 claim should be dismissed because "[a]lthough an IDEA student is also covered under 504 the student is only entitled to one FAPE.  J.L. cannot receive both an IDEA remedy and a 504 remedy for the same denial of FAPE."  (Docket No. 5 at 18.)

A plain language reading of the statute however contradicts this statement.  Section 1415(l) provides that "[n]othing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title

V of the Rehabilitation Act of 1973 [29 USCS §§ 790 et seq.], or other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l). The text of the IDEA specifically provides that a plaintiff may pursue remedies under other statutes, including section 504 of the Rehabilitation Act, and therefore Defendant's argument fails.

Defendant further contends that "Plaintiffs have failed to establish a claim separate and apart from the previously litigated IDEA violation to sustain a 504 claim." (Docket No. 5 at 18.) In *Ridgewood*, the Third Circuit held that "the failure to provide a free appropriate public education violates IDEA and therefore could violate § 504." *Ridgewood*, 172 F.3d at 253. The holding in *Ridgewood* has been interpreted to stand for the proposition that the failure to provide FAPE is not per se discrimination under section 504, and that to prevail on a motion to dismiss the plaintiff must still establish "all of the elements of a prima facie case under [section 504]." *Indiana Area School District v. H.H*, 428 F.Supp.2d 361, 364 (W.D. Pa. 2006). Therefore, Plaintiffs need not allege any new facts aside from those previously litigated in the IDEA administrative proceedings to establish a violation of section 504, as long as those facts state a prima facie case. To withstand the Defendant's motion to dismiss, Plaintiffs must set forth sufficient facts to establish that:

> (1) he is disabled as defined by the Act; (2) that he is otherwise qualified to participate in school activities; (3) the school or the board of education receives federal financial assistance; (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at the school; and (5) the school or the board of education knew or should be reasonably expected to know of his disability.

*H.H.*, 428 F.Supp.2d at 363 (citing *W.B.*, 67 F.3d at 492). Further, a plaintiff need not prove that the discrimination required of element (4) is intentional. *Ridgewood*, 172 F.3d at 253.

Lastly, Defendant argues that Plaintiffs have not established a valid prima facie case as "[t]he

record does not reveal and the Parents have not articulated, any instances where J.L. was excluded from participation in, denied the benefits of, or subjected to discrimination at, the school separate and distinct from the admitted failure to provide FAPE for the 2004-2005 school years." (Docket No. 5 at 18.) This Court, however, finds that as the plaintiffs are not required to establish intentional discrimination, the complaint has set forth sufficient facts to establish a prima facie case of discrimination under section 504 and DENIES Defendant's motion to dismiss such claim.

D.    ADA Claim

Defendant argues that Plaintiffs' ADA claim should be dismissed as Plaintiffs have failed to establish bad faith or gross misjudgment by the district as required to demonstrate a violation of the ADA. (Docket No. 5 at 19.) Defense counsel set forth the same argument, verbatim,[13] on behalf of the plaintiff in *H.H*, and such argument was rejected by Chief Judge Ambrose.   In *H.H.,* Chief Judge Ambrose noted the following:

> Plaintiff argues that there is an additional requirement to prove intentional discrimination via bad faith or gross misjudgment.  The Third Circuit has clearly held, however, that a plaintiff need not prove that defendants' discrimination was intentional.  While I recognize that *Ridgewood* dealt only with § 504, the Third Circuit generally has held that the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA.  Consequently, I find that Plaintiff need not prove the additional evidence requirement of intentional discrimination to prove its case under the ADA. Therefore, I need not discuss whether Defendants can establish bad

---

[13]    *See* civil action 04-1696, Docket No. 53 at 8-10.  In the brief filed in this matter, Defense counsel did however replace defendants with plaintiffs, and vice versa, except for the heading, which still states that "Defendants" have not established bad faith as required under the ADA. (Docket No. 5 at 19-20.)

faith or gross misjudgment.

*H.H*, 428 F.Supp.2d at 363 n. 3 (internal citations omitted).  As Defendant cites no additional

authority in support of its claim that bad faith or gross misjudgment is required to demonstrate a

violation of the ADA, this Court  sees no reason to depart from the well-reasoned holding in *H.H*,

and, as such, the Court DENIES Defendant's motion to dismiss the Plaintiffs' ADA claim.

## VI.     CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the

Defendant's Motion to Dismiss [DE 4].  The Court grants said motion to the extent that Plaintiffs'

claims of money damages under the IDEA at Count III of their complaint are dismissed with

prejudice.  The Court also grants the motion striking Plaintiffs' assertion of certain common law

doctrines to toll the IDEA statute of limitations.  Further, Defendant's motion striking Plaintiffs'

defense that the exceptions to the IDEA statute of limitations are applicable is granted, without

prejudice, but Plaintiffs are granted leave to amend their complaint to conform with the pleading

standard set forth in *Twombly* and *Phillips*.  Such Amended Complaint must be filed within thirty

(30) days of this Opinion.

Defendant's remaining arguments are denied. Accordingly, J.L.'s parents have standing to

pursue claims under the IDEA in their own right, and Plaintiffs are entitled to a review of the state

administrative tribunal's decisions under the IDEA, including the award of compensatory education

and the application of the IDEA statute of limitations.  Plaintiffs may proceed to provide notice of

their proffer of additional evidence to the Court to support their claims, but their offer of proof must

be made within forty-five (45) days of this Opinion and such proffer must demonstrate supplemental,

relevant, non-cumulative, and useful evidence to this Court for the Court to permit the entry of such

evidence in the record.  Further, Plaintiffs have stated sufficient facts to maintain claims under the

ADA and section 504 of the Rehabilitation Act.  All other claims not specifically dismissed in this

opinion or the Court's previous orders remain viable.  An appropriate Order follows.

s/ Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: February 22, 2008

cc/ecf:  All counsel of record