IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.L., a MINOR,  )<br>BY AND THROUGH HIS PARENTS,  )<br>J.L. AND C.L.  )<br>  )<br>    Plaintiffs,  )<br>  )<br>    vs.  )<br>  )<br>  )<br>AMBRIDGE AREA SCHOOL  )<br>DISTRICT  )<br>  )<br>    Defendant.  ) | No. 06-cv-1652<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' "Proffer for Additional Evidence Pursuant to the February 22, 2008 Order of Court" [38]. On January 22, 2008, by Memorandum Opinion and Order, the Court granted in part and denied in part Defendant's motion to dismiss. (Docket Nos. 29 & 30). Within said Memorandum Opinion the Court denied Defendant Ambridge Area School District's ("AASD") motion seeking to strike Plaintiffs' request that this Court hear additional evidence pursuant to 20 U.S.C. § 1415(e)(2) and held that "to properly rule on Defendant's motion, the Court would first need to receive an offer of proof by the Plaintiffs (following the filing of an Amended Complaint) and then the Court must undertake a thorough examination of the current record to determine if such proffered evidence is supplemental, relevant, non-cumulative and useful, as required prior to any hearing and its admission." (Docket No. 29 at 20). The Court therein ordered that Plaintiffs make a proffer of evidence that they wish to submit to the Court by April 8, 2008.

1

(Docket No. 30).

Thereafter, on April 7, 2008, Plaintiffs filed their Notice of Proffer of Evidence (Docket No. 38) and Brief in Support (Docket No. 42). Defendant responded by filing its "Response to Plaintiffs' Proffer of Additional Evidence" on April 18, 2008. (Docket No. 44). Oral argument was heard on May 12, 2008. (Docket No. 47). The Court then ordered that the parties file supplemental briefs (Docket No. 48), which have been filed with the Court (Docket Nos. 49 and 50). Having received both parties' legal arguments, and having reviewed the administrative record, the Court is now able to rule on the Plaintiffs' proffer. For the following reasons, said motion is hereby **GRANTED IN PART AND DENIED IN PART**.

II. **BACKGROUND**[1]

On March 3, 2006, Plaintiffs, through counsel, filed notice with the AASD requesting a due process hearing. (Docket No. 14 at 38; Docket No. 5-3). A due process hearing was subsequently conducted over a series of days on May 16, 2006, May 24, 2006 and June 23, 2006. (Docket No. 29 at 4). Dr. Gerald Dambach, Ed. D., presided over the due process hearing, at the beginning of which he presented both parties with a copy of the procedures to appeal his decision. (Docket No. 14-8 at 3). At the due process hearing, AASD stipulated, on the record, that it had violated J.L.'s right to a free, appropriate education ("FAPE") for the school years of 2004-2005 and 2005-2006. (Docket No. 14-8 at 6). As they had the burden of proof at the administrative level, Plaintiffs

---

[1] As the parties and the Court are well versed in the facts and procedural posture of this case, the Court declines to restate the same here. For a complete recitation of the facts and procedural status of this case, please see this Court's Memorandum Opinion of January 22, 2008 at Docket No. 29.

presented their case first. (Docket No. 14-8 at 4). At the first session of the hearing, Plaintiffs presented the testimony of two witnesses, Dr. Margaret Kay, Ed. D., and Andrew Marc Klein. (Docket No. 14-8 at 3- 55; 14-9 at 1-2). No testimony was heard at the second session on May 24, 2006. (Docket No. 14-7 at 51-55). At the third session, Plaintiffs immediately rested, and declined to present any additional testimony. (Docket No. 14-6 at 36). Despite their being present at the hearings, Plaintiffs' counsel did not offer the testimony of either of J.L.'s parents at the administrative level. Defendant AASD then proceeded to present the testimony of Steve Brown, formerly a teacher at the Huntington Learning Center, Kimberly Rippole, the school psychologist at AASD, Susan Martell, a special education teacher at AASD and Michelle Scala-Dubaich, the then supervisor of special education at AASD. (Docket No. 14-7). Upon the conclusion of the hearing, the Hearing Officer ordered that the parties file post hearing briefs outlining their respective positions. (Docket No. 14-7 at 30).

Subsequently, both parties filed proposed findings of fact and conclusions of law with the Hearing Officer. (*See Defendant's Post Hearing Brief*, Docket No. 14-5 at 20-36; *Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Docket No. 14-5 at 37-55, 14-6 at 1-36). The Hearing Officer then issued a decision dated July 16, 2006. (Docket No. 37-2). Relevant here, the Hearing Officer found that the Individuals with Disabilities in Education Act ("IDEA") statute of limitations barred Plaintiffs' claims prior to March 4, 2004. *Id*. at 6-8. In so holding, the Hearing Officer found that the IDEA statute of limitations was applicable because of evidence presented at the hearing that the parents had previously requested due process hearings on three occasions, two of which requests were withdrawn by the parents, and that the parents had been represented by

3

Charles Jelly, Esq. in their dealings with the Defendant AASD since at least 2002.[2] *Id*. at 7. The Hearing Officer further found that the exceptions to the IDEA statute of limitations did not apply because "[n]o testimony was presented that the district misrepresented that it had not resolved the problem nor was there any evidence presented that the district withheld any information from the parents." *Id*. As J.L.'s claims for educational services for previous school years were time-barred, the Hearing Officer awarded 990 hours of compensatory education to remedy the violations in both the 2004-2005 and 2005-2006 school years for a total of 1980 hours of compensatory education. *Id*. at 8.

The Plaintiffs set forth several exceptions to the Hearing Officer's decision before the Appeals Panel, including the calculation of the compensatory education award and the application of the IDEA statute of limitations. (Docket No. 14-4 at 36-55, 14-5 at 1-17). In response, the Defendant submitted an Answer to Plaintiffs' Exceptions and a Brief in Support to the Appeals Panel. (Docket No. 14-4 at 9-30). The Appeals Panel thereafter issued an opinion after having first reviewed the hearing transcript and admitted exhibits. (Docket No. 14 at 34-47). Pertinent to the instant matter, the Appeals Panel upheld the Hearing Officer's determination that the IDEA statute of limitations was applicable and that the parents had not met their burden of proving that the exceptions to the statute had been met. *Id*. at 41-42. Further, the Appeals Panel reversed the Hearing

---

[2] The record contains four letters drafted by Plaintiffs' Counsel supporting the Hearing Officer's finding that the due process hearings were requested and later withdrawn by the Plaintiffs. (July 11, 2005 Letter, Docket No. 15 at 30; August 13, 2002 Letter, Docket No.15 at 50; December 21, 2004 Letter, Docket No. 15 at 52-55, 15-2 at 1-2; and January 7, 2005 Letter, Docket No. 15-2 at 3). A fifth letter by Plaintiffs' Counsel dated March 3, 2006, in which Plaintiffs request the due process hearing that is in dispute here, was attached by the Defendant to its Motion to Dismiss. (*See* Docket No. 5-3).

Officer's order of compensatory damages finding, that in addition to the grant of 1980 hours of compensatory education, J.L. was entitled to: an additional three (3) hours of compensatory education for every day from March 3, 2004 to the end of the 2004-2005 school year; and an additional five and a half (5 ½) hours of compensatory education for every day from March 3, 2004 to the end of the 2005-2006 school year representing other services that J.L. would have received over that period. *Id*. at 46-47. The Appeals Panel discussed the standard for calculating an award of compensatory education as set forth by the Commonwealth Court of Pennsylvania in *B.C. ex rel. J.C. v. Penn Manor School Dist.*, 906 A.2d 642 (Pa. Cmwlth. Ct. 2006), but found the standard to be unworkable based on the record before it, as the expert testimony offered by the parents' experts was not conformed to the *B.C.* standard. *Id*. at 44. Specifically, the Appeals Panel held that "[a] careful review of the evidence in the present case reveals no testimony or exhibit that addresses the question of where [J.L.] would have been had he been provided FAPE. Instead, the witnesses testified to where he should be functioning based on his characteristics." *Id*.

Plaintiffs thereafter filed a Complaint in this Court alleging several claims against Defendant, including a request that the Court conduct a de novo review of the Appeals Panel decision, and that this Court admit additional evidence to supplement the administrative record. (Docket No. 1). Defendant responded by filing a motion to dismiss on multiple grounds. (Docket No. 4). This Court authored a Memorandum Opinion (Docket No. 29) in which the Defendant's motion to dismiss was granted in part but denied as to Plaintiffs' request that this Court admit additional evidence, and as to the claim that the IDEA statute of limitations barred all of Plaintiffs' claims prior to March 3, 2004. In so holding, this Court also ordered Plaintiffs to submit to the Court a Proffer of Additional Evidence to which the Defendant, in turn, filed a brief in opposition, as outlined above.

5

## III. LEGAL STANDARD

### a. "Cooperative Federalism" of the IDEA

The Supreme Court of the United States has held that "[t]he goals of IDEA include ensuring that all children with disabilities have available to them a free appropriate public education and ensuring that the rights of children with disabilities and parents of such children are protected." *Winkelman v. Parma City School Dist.,* --- U.S. ---, 127 S.Ct. 1994, 2000 (May 21, 2007) (citing 20 U.S.C. §§ 1400(d)(1)(A)-(B) (2000 ed., Supp. IV)). The "IDEA places on the states the primary responsibility for satisfying the goals of the statute. IDEA, described by several courts as a model of 'cooperative federalism', authorizes federal funding for states providing the special education that the statute requires, but funding is contingent on state compliance with its array of substantive and procedural requirements, 20 U.S.C. § 1412." *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 82 (3d Cir. 1996) (internal citations omitted).

Pursuant to the IDEA, the Commonwealth of Pennsylvania employs a two-tiered procedural system to resolve disputes as to whether a free, appropriate public education has been afforded to an eligible student. *See* 22 Pa. Code § 14.162. At the first tier, an impartial due process hearing is held in which the parties are permitted to admit evidence including the testimony of lay and expert witnesses. *See* 22 Pa. Code § 14.162(m). Hence, an administrative record is developed at the impartial due process hearing. A hearing officer presides over the impartial due process hearing, and at the conclusion of such hearing, the hearing officer issues a decision outlining his or her findings of fact and conclusions of law. *See* 22 Pa. Code § 14.162(n). The second tier permits a party to appeal the decision of the hearing officer to an Appeals Panel of three appellate hearing officers. *See* 22 Pa. Code § 14.162(o). The Appeals Panel is required by statute to examine the administrative

record from the due process hearing to ensure that the procedures employed at such hearing comport with due process. *See* 22 Pa. Code § 14.162(r)(1)-(2). Ultimately, the Appeals Panel has the authority to "make an independent decision on completion of the review [of the administrative record.]" *See* 22 Pa. Code § 14.162(r)(5).

The IDEA also provides that this Court shall have judicial review over the state administrative proceedings. Specifically, the IDEA provides that:

> any party aggrieved by the findings and decision [of the administrative proceedings] ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

22 U.S.C. § 1415(i)(2)(A). The IDEA further provides that:

> [i]n any action brought under this paragraph, the court--(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

22 U.S.C. § 1415(i)(2)(C).

Despite the permissive language used in the IDEA which seemingly grants wide discretion to district courts in the administration of IDEA proceedings, the United States Supreme Court has held that a district court is required to give "due weight" to the administrative proceedings. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist., et al. v. Rowley*, 458 U.S. 176, 206 (1982). The "due weight" requirement has been interpreted by the United States Court of Appeals for the Third Circuit to require a district court to conduct a modified *de novo* review of the proceedings below. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 269 (3d Cir.2003). The amount of

deference granted to the administrative proceedings is contingent upon a determination of whether or not the district court admits additional evidence pursuant to Section 1415(i)(2)(C)(ii) of the IDEA. If additional evidence is not admitted, the district court is "required to defer to the [administrative law judge]'s factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record" and "must explain why it does not accept the [administrative law judge]'s findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *S.H.*, 336 F.3d at 270 (citing *Susan N.*, 70 F.3d at 757). If, however, additional evidence is admitted by the district court, it is "free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act." *S.H.*, 336 F.3d at 270 (quoting *Oberti v. Board of Education of the Borough of the Clementon School District*, 995 F.2d 1204, 1220 (3d Cir.1993)).

     b.    <u>Additional Evidence</u>

As stated in the Court's Memorandum Opinion of February 22, 2008, the applicable legal standard with regard to Plaintiffs' request that this Court hear additional evidence is as follows:

> [t]he IDEA provides that district courts "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(e)(2) (2005). Despite the mandatory language of the statute, the determination of whether or not to allow the admission of additional evidence, and if additional evidence is to be admitted, what evidence, is a determination left to the trial court's discretion. *Susan N. v. Wilson School Dist.*, 70 F.3d 751, 760 (3d Cir. 1995) (citing *Carlisle Area School v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995); *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994); *Oberti v. Board of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993); *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 791-92 (1st Cir. 1984)). Other Circuits have construed "additional" as "supplemental." *See Burlington*, 736 F.2d at 790; *Ojai*, 4 F.3d *Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993). The Third Circuit has declined to adopt any bright line rule which would find that the

8

> proper construction of "additional" evidence would exclude all testimony from those who did, or could have, testified at the original administrative hearing. *Susan N.*, 70 F.3d at 759-760. Instead, the Third Circuit "decided a [trial] court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful." *Id.* at 760. This admission of additional evidence includes the ability to hear testimony concerning relevant, non-cumulative events that occur subsequent to the administrative hearings. *Id.* at 759 (citing *Ojai*, 4 F.3d at 1471).

(Docket No. 29 at 19-20). In evaluating the potential admission of additional or supplemental evidence, the Court must give deference to the statutorily prescribed administrative proceedings. "To negotiate this statutorily prescribed deference, a court must determine whether the party introducing the additional evidence has presented a sufficient justification for not proffering the evidence at the administrative hearing." *Antoine M. v. Chester Upland School District*, 420 F.Supp.2d 396, 403 (E.D. Pa. 2006). In *Antoine M.*, the United States District Court for the Eastern District of Pennsylvania analyzed the following factors to determine whether a sufficient justification had been presented by the party seeking to admit additional evidence:

> (A) The existence of a procedural bar which prevented the introduction of the proffered evidence below, such as a limitations period or a restriction on the number of witnesses. (citing *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901-902 (7th Cir. 1996);
>
> (B) Whether the evidence was deliberately withheld at the administrative level for strategic reasons. (citing *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 998 (1st Cir. 1990);
>
> (C) Whether the introduction of the additional evidence at the district court level would be prejudicial to the other party, i.e., if the additional evidence would interfere with the adverse party's ability to rebut it; and,
>
> (D) The potential impact on the administration of justice, i.e., does the party seek to introduce a new theory under which it will be

entitled to relief. (citing *Susan N.*, 70 F.3d at 759).

*Id.* at 403. Finally, in exercising its discretion, the Court should ultimately determine whether the evidence would "assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved." *Susan N.*, 70 F.3d at 760.

## IV. ANALYSIS

In their Proffer of Additional Evidence, Plaintiffs have requested that this Court hear and admit the following testimony to supplement the administrative record:

>  (a) the appropriate amount of compensatory education;
>
>  (b) J.L.'s post-administrative hearing lack of progress;
>
>  (c) testimony regarding the Defendant's misrepresentations and its failure to provide mandated information thereby extending the IDEA filing deadline; and,
>
>  (d) testimony supporting the parents' contentions that the Defendant's misrepresentations and its failure to provide mandated information interfered with and denied them their right to participate in their son's education as recognized in *Winkleman v. Parma City Sch. Dist.*, 127 S.Ct. 1994 (2007).

(Docket No. 38 at 1). As detailed in the discussion below, Plaintiffs maintain that they "have valid reasons for not presenting the additional evidence during the administrative hearing that they now seek to present." (Docket No. 42 at 3). Defendant argues that the Court should deny Plaintiffs' request as the Plaintiffs have not met their burden for this Court to hear additional evidence. (Docket No. 44 at 1). The Court will now discuss each of the Plaintiffs' requests, in turn.

    a.    <u>Expert Testimony as to the Calculation of the Award of Compensatory Education</u>

In their Proffer of Additional Evidence, Plaintiffs first "request leave of Court to supplement the Special Education Administrative Record with the testimony of Andrew Marc Klein and Dr.

Margaret Kay, Ed. D., regarding the calculation of the appropriate relief in the form of prospective compensatory education." (Docket No. 38 at 2). Plaintiffs argue that the Appeals Panel erred in failing to apply a qualitative standard, set forth by the Commonwealth Court of Pennsylvania in *B.C. ex rel. J.C. v. Penn Manor School Dist.*, 906 A.2d 642 (Pa. Cmwlth. Ct. 2006), in which Plaintiffs assert that the Commonwealth Court "held that a handicapped student is entitled to an amount of compensatory education that is reasonably calculated to place the child at the level he would have achieved but for the District's failure to provide FAPE."[3] (Docket No. 38 at ¶ 4). Defendant counters arguing that the Commonwealth Court standard is not relevant to these proceedings because the *B.C.* decision is not binding on this Court and is distinguishable from the instant matter as *B.C.* involved the denial of FAPE to a gifted student, not covered by the IDEA. (Docket No. 44 at 4).

The Court agrees with the Defendant and finds that the *B.C.* standard is not relevant to these proceedings and therefore, the request of Plaintiffs to supplement the administrative record by virtue of expert testimony applying the *B.C.* standard is denied.

In *B.C.*, the Commonwealth Court affirmed an Appeals Panel award of compensatory education to a gifted student for a denial of FAPE by the Defendant school district. The Commonwealth Court recognized that the IDEA, 20 U.S.C. §§ 1400, *et seq.*, does not apply to gifted students, and that Pennsylvania law, specifically Title 22, Chapter 16 of the Pennsylvania Code, governs an alleged denial of FAPE to a gifted student. *Id*. at 646 n. 7 (citing *Saucon Valley Sch. Dist. v. Jason O.*, 785 A.2d 1069, 1075 n. 10 (Pa.Cmwlth. 2001)); *see also E. N. v. M. School*

---

[3] The Court notes that Plaintiffs have misconstrued the Commonwealth Court's holding in *B.C.*, which clearly did not involve a "handicapped" student, but involved a "gifted" student. Plaintiffs further failed in their briefs to inform the Court that the statutory construct applicable to gifted students is not the IDEA, but Pennsylvania law. *B.C.*, 906 A.2d at 646 n. 7.

*District*, 928 A.2d 453, 461 n. 12 (Pa. Cmwlth. 2007). The Commonwealth Court further held that "[a]lthough this court has determined that compensatory education is an appropriate remedy, once the Panel finds that the [gifted] student was denied a FAPE, we have found no decision setting out a standard for determining the amount of compensatory education to be awarded a student." *Id.* at 649. As no decision existed that set forth the appropriate standard for calculating a compensatory education award under Pennsylvania law, the Commonwealth Court discussed the standards of three federal circuits "for determining the amount of compensatory education to be awarded under the IDEA." *Id*. The Commonwealth Court noted that "[a]lthough these cases involve a different statutory scheme that applies only to students receiving special education services (and not to gifted children), we find the discussions contained therein instructive." *Id*. at 649.

The Commonwealth Court thereafter engaged in a discussion of the applicable standards and citing as authority, *M.C. v. Central Regional School District*, 81 F.3d 389 (3d Cir. 1996), acknowledged that "in cases under the IDEA, the Third Circuit awards compensatory education solely on the basis of the actual time a student was deprived of a FAPE, without further analysis." *B.C.*, 906 A.2d at 650. After some discussion of the applicable standards in the Ninth and District of Columbia Circuits, the Commonwealth Court held that:

> we find the Ninth and District of Columbia's Circuits' standard more persuasive and workable than that of the Third Circuit, as it tailors the equitable award of compensatory education to the particular student's needs, which a one-for-one standard fails to do. Hence, we reject Student's proposed hour-for-hour standard. Rather, we hold that where there is a finding that a student is denied a FAPE and the Panel determines that an award of compensatory education is appropriate, the student is entitled to an amount of compensatory education reasonably calculated to bring him to the position that he would have occupied but for the school district's failure to provide a FAPE.

12

*Id*. at 650-651. Therefore, the Commonwealth Court adopted the standard set forth by the United States Courts of Appeals for the Ninth and District of Columbia Circuits to calculate an award of compensatory education granted to a gifted student pursuant to Pennsylvania law.

In this Court's estimation, the *B.C.* standard for calculating an award of compensatory education for denial of FAPE is only applicable to that case where a gifted student is challenging such denial under Pennsylvania law, and not to a student suffering from disabilities who is seeking relief under the IDEA, a federal law, as Plaintiffs are in the instant matter. As the *B.C.* standard is inapplicable here, any testimony proffered in support of a calculation pursuant to that standard is not relevant to this proceeding. Accordingly, Plaintiffs' request for admission of expert testimony as to the award of compensatory education by the Appeals Panel is denied.

      b.      <u>Post-Administrative Hearing Lack of Progress</u>

Plaintiffs also seek to admit expert testimony of Dr. Carol Utay, Ed.D., of the Total Learning Center, to testify as to "J.L.'s present levels of education performance and the continuing effect of having been denied FAPE since the administrative proceedings." (Docket No. 38 at ¶ 17). Plaintiffs assert that said testimony will "assist the court in calculating the appropriate relief of compensatory education." (Docket No. 38 at ¶ 18). In their Brief in Support, Plaintiffs further offer that Dr. Utay will "testify as to the amount of compensatory education J.L. requires to bring him to the level he would have achieved but for the denial of FAPE." (Docket No. 42 at 6). Defendant argues that such evidence should not be admitted because (1) any evidence proffered by Plaintiffs which alleges violations during the 2006/2007 school year is barred as Plaintiffs did not request a due process hearing for that school year and hence, did not fully exhaust administrative remedies; (2) any testimony offered by Dr. Utay, Plaintiff J.L.'s current educational provider, and chosen by the

13

parents, is self-serving and prejudicial to the Defendant; and, (3) the type of after-acquired evidence requested by Plaintiffs is only admissible if it bears on the reasonableness of a previously made decision by Defendant regarding J.L.'s educational placement. (Docket No. 44 at 5-6).

As this Court understands Plaintiffs position, Plaintiffs are requesting that the Court hear testimony regarding events that occurred after the due process hearing and appeals panel review. With regard to the admissibility of such after-acquired evidence, the United States Court of Appeals for the Third Circuit has held that "[s]uch evidence may be considered only with respect to the *reasonableness* of the district's decision at the time it was made." *Susan N.*, 70 F.3d at 762 (emphasis included).

First, Plaintiffs have not proffered the admission of Dr. Utay's testimony for the purpose of this Court's evaluation of the *reasonableness* of any educational placement decision made by the District. Second, the Court finds that to the extent Plaintiffs are requesting that the Court hear the testimony of Dr. Utay as additional or supplemental evidence relating to the "but for" standard in *B.C.* discussed above, such evidence is not relevant and likewise not admissible to support such a theory. Third, to the extent that Plaintiffs maintain that such evidence is admissible to establish a denial of FAPE during the 2006/2007, no due process complaint was filed by the Plaintiffs for this time period. Thus, Plaintiffs have not fully exhausted administrative remedies as required under the IDEA for their claims during the 2006/2007 school year. *See* 20 USC 1415(l) (2005). Fourth, as this Court reads the record of the administrative proceedings, it is fully developed as to J.L.'s disabilities. Accordingly, Plaintiffs' request to admit the expert testimony of Dr. Utay is, therefore, denied.

    c.    <u>Testimony of the Parent Plaintiffs</u>

Plaintiffs have also requested that this Court admit the testimony of the Parent Plaintiffs, Dr. and Mrs. J.L., to supplement the administrative record as to the Defendant's alleged misrepresentations and failure to provide certain information to the parents. (Docket No. 38). Plaintiffs argue that the proffered testimony is relevant, non-cumulative and useful to the Court in its determination as to whether the Plaintiffs can meet the exceptions to the IDEA statute of limitations. Plaintiffs further contend that the decision of the United States Supreme Court in *Winkelman v. Parma City Sch. Dist.,* 127 S. Ct. 1994 (2007), supports the admission of the parents' testimony at this stage. Defendant argues that the Plaintiffs failed to meet their burden of proof that they could meet the exceptions to the statute of limitations at the administrative level, and had ample opportunity to introduce such evidence, but have failed to do so. (Docket No. 44 at 7). Defendant also refutes Plaintiffs' contention that they were lulled into a false sense of security by the Defendant and prevented from requesting a due process hearing, pointing to Plaintiffs' multiple requests of due process hearings and later withdrawals of those requests prior to the 2006 hearing. *Id*.

Specifically, Plaintiffs request that the Court admit the following testimony of the parents.

> 20. The parents seek to supplement the Special Education Administrative Record as to the violation of their procedural due process rights.
>
> 21. The Supreme Court, in *Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994 (2007), held that parents have procedural due process rights to participate in their child's education that are separate and apart from that student.
>
> 22. The parents will testify that the Defendant's misrepresentations and failures to provide mandated information lulled them into a false sense of security regarding J.L.'s educational needs, his handicapping condition(s), and his program and placement. Further, that because they relied upon the representations and limited information provided by the Defendant, they delayed initiating the proceedings.

(Docket No. 38 at ¶¶ 20-22).

The Court interprets the Plaintiffs' request as encompassing testimony of the parents regarding both the application of the IDEA statute of limitations and the statutory exceptions thereto.[4] In *Winkelman v. City of Parma Sch. Dist.*, the Supreme Court held that parents have "independent, enforceable rights" under the IDEA and that parents could proceed *pro se* in federal court to enforce such rights. *Winkelman*, 127 S.Ct. at 2005. The *Winkelman* Court further held that the scope of a parent's rights under the IDEA "are not limited to certain procedural and reimbursement-related matters, [but] encompass the entitlement to a free appropriate public education for the parents' child." *Id*. The proffered testimony of the Parent Plaintiffs regarding the misrepresentations and omissions of the Defendant AASD thus implicates both the rights of the parents and their child under the IDEA.

A review of the transcript of the due process hearing demonstrates that the Parent Plaintiffs were present at the due process hearing, but did not testify. While the Third Circuit has declined to adopt a bright line rule excluding the testimony of all witnesses that could have testified at the due process hearing, *see Susan N.*, 70 F.3d at 759-760, this Court must first determine if the Plaintiffs were justified in not presenting such testimony at the proceedings below. *See Antoine M.*, 420 F.Supp.2d at 403.

The Plaintiffs bore the burden of proof at the due process hearing pursuant to *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49 (2005), because they were the party requesting relief at such hearing.

---

[4] To the extent that Plaintiffs' proffer requests that additional evidence of the parents be admitted to support their claim for money damages under the IDEA, this Court has previously held that money damages are not "appropriate relief" under the IDEA and such request is denied. (*See* Docket No. 22).

16

Therefore, the Plaintiffs carried the burden to prove that J.L. was denied a FAPE by Defendant AASD as was alleged at the administrative level. Indeed, both the Hearing Officer (Docket No. 37-2 at 6-7) and the Appeals Panel (Docket No. 14 at 40-41) found that the Plaintiffs had met their burden in regard to establishing that J.L. was denied a FAPE by AASD.

AASD defended the claims that J.L. was denied a FAPE by asserting that the IDEA statute of limitations barred all of Plaintiffs' claims that occurred two years prior to the request of a due process hearing by the Plaintiffs. In *Schaffer*, while discussing whether a child or school district bore the ultimate burden of proof in IDEA proceedings, the Supreme Court held that "the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Schaffer*, 546 U.S. at 57. The IDEA statute of limitations, at section 1415(f)(3)(C) of the IDEA, provides that:

> [a] parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this sub-chapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C) (2005). In an earlier Memorandum Opinion, this Court interpreted the IDEA statute of limitations and applicable Regulations and held that "the IDEA statute of limitations is triggered when the parent knew or should have known about the action that forms the basis of the complaint." (Docket No. 22 at 13). The Defendant school district was the party that asserted the statute of limitations as a defense at the administrative level. Thus, the Court finds that the IDEA statute of limitations can be construed as an affirmative defense and, as such, the Defendant AASD would properly bear the burden of proof on this defense at the administrative level.

Section 1415(f)(3)(D) enumerates two exceptions to the statute of limitations, providing, in

17

relevant part, that the statute of limitations:

> shall not apply to a parent if the parent was prevented from requesting the hearing due to:
>
>> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
>>
>> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D) (2005). Applying the analysis in *Schaffer* to the statutory exceptions, if the Defendant successfully demonstrates that it has met its burden of proof as to the statute of limitations, the burden of proof would then shift to the Plaintiffs to prove the applicability of these exceptions. As this Court has previously held, a determination of whether the exceptions are met will require a "highly factual inquiry." (Docket No. 22 at 15). Thus, in the event that the Defendant meets its burden of proof as to the applicability of the IDEA statute of limitations, this Court must then conduct a highly factual inquiry to determine if such exceptions apply in this case.

In *Antoine M.*, the district court found that the intervening decision by the Supreme Court in *Schaffer* shifted the burden of proof from the school district to the child in IDEA proceedings while the case was on appeal at the district court. *Antoine M.*, 420 F.Supp.2d at 404-405. The district court further held that the plaintiff was justified in not presenting certain evidence at the administrative level because he did not have the burden of proof at that stage. *Id*. The plaintiff was then permitted to admit additional evidence at the district court, including the testimony of certain witnesses who were found to be able to testify at the administrative level, but did not. *Id*.

Accordingly, given the Court's discretion in this matter, and in light of the parents IDEA

rights under *Winkelman,* the burden shifting analysis of *Schaffer* applied to the IDEA statute of limitations and the decision in *Antoine M.*, the Court finds that sufficient justification exists to permit the Plaintiffs to present the proffered testimony of the parents. The Court further finds that the testimony of the parents is relevant, non-cumulative and useful to the resolution of the instant matter. First, the parents' testimony is relevant as to the proper application of the IDEA statute of limitations and statutory exceptions to the instant facts. Second, the testimony was not offered at the administrative proceedings and is not cumulative to any other evidence. Third, the testimony will be useful to the Court in this matter as it will "assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved." *Susan N.*, 70 F.3d at 760. Accordingly, the Plaintiffs' Proffer as to the parents' testimony regarding alleged misrepresentations and omissions of the Defendant is GRANTED and such evidence will be accepted by the Court.

Finally, fairness dictates that the Defendant be permitted to present additional evidence to rebut the parents' testimony. Accordingly, the Court will permit such rebuttal evidence, including that of former witnesses, but only to the extent that such testimony is not redundant or an embellishment of prior testimony. *See Antoine M.*, 420 F.Supp.2d at 405 n. 12.

## V. CONCLUSION

Based on the foregoing, the Plaintiffs' "Proffer for Additional Evidence Pursuant to the February 22, 2008 Order of Court" [38] is hereby **GRANTED IN PART AND DENIED IN PART**. The proffered testimony of expert witnesses, Andrew Marc Klein and Dr. Margaret Kay, Ed. D., to support Plaintiffs' calculation of the compensatory education award pursuant to the decision by the Commonwealth Court of Pennsylvania in *B.C. ex rel. J.C. v. Penn Manor School Dist* is not admissible as the *B.C.* standard is not applicable to a calculation of a compensatory education award

for violations of the IDEA. Testimony proffered by Dr. Carol Utay, Ed.D. is also not admissible as such testimony either supports the Plaintiffs' contention that the compensatory education award should be calculated pursuant to *B.C.* (which this Court has rejected) or is not offered to determine the *reasonableness* of any decision made by the Defendant AASD. The proffered testimony of the Parent Plaintiffs regarding the alleged misrepresentations or omissions of the Defendant is accepted and the Court will admit such testimony. Further, the Defendant shall have the ability to admit rebuttal evidence to the extent that it is not redundant or an embellishment of prior testimony. An appropriate Order follows.

s/ *Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: July 18, 2008

cc/ecf: All counsel of record.